NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Schrecker, et al., | No. CV-16-03511-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Radlink Incorporated, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 78).[1] Plaintiff filed a Response in Opposition to the Motion (the "Response") (Doc. 81) and Defendant filed a Reply (Doc. 82). Although this case was filed in 2016, it is presently at the motion to dismiss stage because of a lengthy sequence of events, including jurisdictional discovery and multiple amendments to the initial complaint. No answer has been filed.

**I.   Background**

Plaintiff Christian Schrecker[2] ("Schrecker"), on behalf of himself and other similarly situated individuals, filed the initial complaint on October 14, 2016 (Doc. 7), in addition to filing a Motion for Temporary Restraining Order ("TRO") (Doc. 9). Defendant

---

[1] Both parties requested oral argument in this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The Complaint has been amended twice, and the named Plaintiffs have changed multiple times. For clarity, any reference to "Plaintiff" refers to the only remaining named plaintiff, Debra Blum. (Doc. 74).

Radlink Incorporated ("Radlink"), is a company that operated servers which stored patient medical records and x-ray imaging. (Doc. 35 at 2). Schrecker alleged that his medical information was stored on Radlink's servers. (Doc. 7).

The initial complaint alleged that Radlink's remote servers were susceptible to hacking by unauthorized third-parties. (*Id.*) The motion for TRO further alleged that Schrecker, and all other putative class members, faced the immediate threat that their personal medical data would be stolen, thereby causing irreparable harm to Plaintiffs. (Doc. 9). In response to these allegations, Radlink immediately took its servers offline in October 2016 to investigate the issues raised by Plaintiff. (Doc. 21). Thereafter, a third-party security firm concluded that all vulnerabilities alleged in the motion for TRO and complaint had been remedied and opined that no irreparable injuries could occur. (*Id.*) Plaintiff withdrew his motion for TRO on November 14, 2016, filing a Notice stating that "Plaintiff is satisfied that – as matters presently stand – the JBOSS vulnerabilities identified in the Complaint and Motion have been remedied, and therefore, his Motion is moot." (Doc. 22). Plaintiff further stated that he was satisfied with the independent third-party declarations, which concluded that no breach had occurred, and that Plaintiff's information was secure.[3] (*Id.*)

After the withdraw of the Motion for TRO, Radlink filed its first motion to dismiss the complaint. (Doc. 32). Radlink argued that the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because there was no evidence that Schrecker's records were ever uploaded to Radlink's servers, and therefore Schrecker had no standing. Rather than file a response to that motion, Plaintiff filed a notice that an amended complaint would be filed to name new plaintiff representatives, pursuant to Fed. R. Civ. P. 15(a)(1). (Doc. 33). Radlink withdrew its motion to dismiss. The First Amended Complaint was filed on February 10, 2017, and listed Debra Blum and Jordan Garst as Plaintiffs. (Doc. 35). Radlink filed a second motion to dismiss arguing that, as with Schrecker, there was no evidence that Plaintiff Garst's records were ever uploaded to Radlink's servers. (Doc. 38).

---

[3] Plaintiff has not renewed this motion or alleged that there has been any further risk of irreparable harm since the withdraw of the motion for TRO over two years ago.

1   For a second time, Plaintiffs did not respond to the motion to dismiss, but instead filed a
2   motion for jurisdictional discovery. (Doc. 41). The Court agreed, but limited discovery
3   "to whether the servers contain any medical records pertaining to the Plaintiffs and, to the
4   extent it can be determined, whether any medical records on the servers have been viewed
5   or otherwise accessed by hackers or other unauthorized persons." (Doc. 47 at 5).

6   On May 25, 2018, a Second Amended Complaint (the "SAC") was filed, this time
7   listing Debra Blum as the sole Plaintiff. (Doc. 74). The SAC alleges one count of unjust
8   enrichment and one count of violations of the California Unfair Competition Law (the
9   "UCL"). (*Id.*) Radlink filed its third Motion to Dismiss on June 25, 2018. (Doc. 78).

10  The allegations as to Plaintiff Blum stem from a visit to a FastMed center in
11  Glendale, Arizona.[4] (Doc. 74 at 32). Plaintiff alleges that FastMed used Radlink's systems
12  to store her x-ray images. (*Id.*) Plaintiff claims that she "indirectly" paid FastMed for the
13  medical care she received, and that if she had known her information would not be safe
14  with Radlink, she would have not chosen FastMed to provide her medical care. (*Id.*)
15  Therefore, she argues she has adequately pleaded economic harm to confer standing.
16  (Doc. 81 at 7). Notably, the SAC does not allege that any of her information was stolen
17  from Radlink's servers.

18  In its Motion to Dismiss, Radlink argues that the allegations in the SAC fail to
19  establish Article III standing because Plaintiff has not shown an injury in fact, and therefore
20  the case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. 78). Radlink first
21  argues that the SAC only alleges a potential for harm, related to the possibility of Plaintiff's
22  data being stolen. Radlink also argues that Plaintiff has not established an injury in fact
23  with regard to economic harm under her theories of unjust enrichment or under the UCL.
24  The Court agrees with Radlink and will grant the Motion to Dismiss for the reasons stated
25  herein.

---

[4] The SAC does not make the link between Plaintiff and Radlink clear to the Court. Not until page 32 of the Complaint does it allege that Plaintiff Blum was previously a patient at a FastMed location in Glendale, Arizona. Moreover, FastMed is not a defendant in this matter.

## II. Motion to Dismiss Legal Standard

Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*"). Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998). In that event, the case must be dismissed pursuant to Rule 12(b)(1). *Id.*

To establish standing, a plaintiff seeking the jurisdiction of a federal court has the burden of clearly demonstrating that she has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S., at 518); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss). Moreover, in a class action, named plaintiffs representing the class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502.

Fed. R. Civ. P. 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court may dismiss a complaint when the allegations of and documents attached to the complaint are insufficient to confer subject-matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In this context, all allegations of material fact are taken as true and construed in the light most favorable

to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment").

Finally, under Fed. R. Civ. P. 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In other words, while courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 570.

Establishing the plausibility of a complaint's allegations is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although a plaintiff's specific factual allegations may be consistent with a plaintiff's claim, a district court must assess whether there are other "more likely explanations" for a defendant's conduct such that a plaintiff's claims cross the line "from conceivable to plausible." *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570). This standard represents a balance between Rule 8's roots in relatively liberal notice pleading and the need to prevent "a plaintiff with a largely groundless claim" from "'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value.'" *Twombly*, 550 U.S. at 557–58 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

With these principles in mind, the Court will examine the sufficiency of Plaintiff's

SAC.

## III. Analysis

Plaintiff, being the party asserting jurisdiction in this Court, bears the burden of establishing standing. Defendant argues that this Court does not have jurisdiction because Plaintiff has not alleged that she suffered an injury in fact. If there is no alleged injury in fact, there is no need to consider the other elements of Article III standing. *See Kokkonen,* 511 U.S. 375. A review of the SAC reveals two claims for general economic injuries, both apparently stemming from the storage of Plaintiff's medical information on Radlink's servers. The Court will first consider the allegations regarding the server vulnerabilities.

### A. Potential for Harm from Server Vulnerability

Plaintiff alleges in her SAC that her private medical information was exposed, and "very likely accessed and/or viewed by unauthorized third parties." (Doc. 74 at 2-3). She argues in her Response that she has sufficiently established an injury in fact for purposes of Article III standing. (Doc. 81).

To determine whether there is Article III standing, this Court must identify pleadings that allege an injury in fact that would confer standing. *See Kokkonen,* 511 U.S. 375. The forty-three-page SAC is replete with statements regarding the *potential* for harm, the *vulnerabilities* on Radlink's servers, the need for injunctive relief to protect Plaintiff's information, and the award of actual damages and restitution for the unspecified harm occurring to her. (Doc. 74) (emphasis added). A brief summation of the allegations in the complaint are as follows: that because of Radlink's server vulnerability, Plaintiff's medical information "was *very likely* accessed *and/or* viewed by unauthorized third parties, and was at *great risk* of further unauthorized disclosure and breach" (Doc. 74 at 2) (emphasis added in all following); that "hackers *could have* accessed" confidential communications (*Id.* at 17); that patients "*remain at risk* of suffering" harm (*Id.* at 3); that "there is a *significant likelihood* that [Radlink] already allowed unauthorized third parties to view and access the confidential medical data in its control" (*Id.*); that "*it is likely*" that Radlink has "suffered a data incident" (*Id.* at 20); and that "*if* a hacker gained further access to Radlink's

systems, he or she *might* have accessed a physician's or clinic's internal network to tamper with at-risk patients and the delivery of vital medical care" (*Id.* at 21). Plaintiff also alleges in her SAC that "the risk of this vulnerability is not just theoretical," and spends numerous pages citing to news articles and studies regarding the potential for electronic data to be stolen when there are vulnerabilities in the system.[5] While the articles cited in the SAC discuss actual injuries suffered by other individuals, Plaintiff's harm is only theoretical.

To support her argument that the SAC pleads an injury in fact, Plaintiff cited several cases in her Response. However, these cases, most of which are from other circuits and district courts throughout the Ninth Circuit, are not binding on this Court.[6] More importantly, the cited cases are only similar to the facts in this case insofar as that they involve electronically stored data. These cases are unlike the facts here because they involve allegations of concrete economic harm. Furthermore, the cases cited regarding future economic harm relate to situations where an individual's *financial* identity had been compromised, and where plaintiffs had alleged either a recognizable financial harm that had already occurred, or an increased risk of financial harm because they had proof that their identities had already been stolen. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2017 WL 3727318, at *3 (N.D. Cal. Aug. 30, 2017) (finding adequate facts were plead to establish an injury in fact where the complaint alleged that "a geographically dispersed hacking group based in Eastern Europe managed to sell copies of the database (of plaintiffs' personal information) to three buyers for $300,000 apiece"); *see also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (holding that plaintiffs had established Article III standing based on "the increased risk of fraudulent

---

[5] The SAC cites to data from the National Institute of Standards and Technology (Doc. 74 at 13), the Department of Homeland Security (*Id.*), a blog entry titled "Cisco Talos Blog: The Doctor Will See You After He Pays The Ransom," discussing another user, completely unrelated to this Defendant, who was hacked (*Id.* at 14), a study from *Bloomberg Business* (*Id.* at 21), studies from CNET, CBS News, and the American Bar Association (*Id.* at 30), and a dozen other articles about parties unrelated to this case. (*Id.* at 21-32).

[6] Plaintiff cites to cases from the Central District of California, the District of Oregon, the Southern District of Florida, and numerous cases from the Northern District of California. The only cite to a District of Arizona case is in relation to the legal standard of review for a Rule 12(b)(1) motion.

- 7 -

charges and identity theft they face because their data has already been stolen"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384, 388 (6th Cir. 2016) (holding that where financial data had been stolen, "a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints"); *In re Zappos*, 888 F.3d 1020, 1023 (9th Cir. 2018) (information stolen included email addresses, passwords, and credit and debit card information for over 24 million customers); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (hackers stole names, addresses, and social security numbers of approximately 97,000 employees).

Unlike the cases Plaintiff cites in support of an injury in fact, the SAC does not allege that her personal information was stolen, misappropriated, put up for sale, or disturbed in any way. The only allegations in the SAC relate to a vulnerability in Radlink's system that was rectified by Radlink immediately upon learning of the issue. Moreover, Plaintiff has admitted through the course of this litigation, and as early as November of 2016, that the "vulnerabilities identified in the Complaint and Motion have been remedied." (Doc. 22).

The initial inquiry for the Court must be whether a complaint pleads an injury in fact to Plaintiff, and therefore whether it has standing. *Spokeo II,* 136 S. Ct. at 1547. Here, the SAC alleges harm that is speculative at best.[7] The actions of the various Plaintiffs in this case buttress this conclusion. Out of three named Plaintiffs over the course of this nearly three-year litigation, only one had information stored on Radlink's servers at any point in the relevant time-period. Moreover, Plaintiff has avowed to the Court that there is no risk of future harm at this time based on the Defendant's taking their servers offline in 2016. (Doc. 22). The Court, drawing on its "judicial experience and common sense," finds

---

[7] Indeed, the SAC also alleges that "it is possible that. . . patient data *had not yet* been extracted from Radlink's systems" (*Id.* at 18) (emphasis added). By making arguments such as this, Plaintiff attempts to shift the burden to the *Defendant* to establish Article III standing, which is certainly not the requirement under established law. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss).

- 8 -

that none of the allegations in the SAC allege an injury in fact to Plaintiff related to the server vulnerabilities.

### B. Economic Injury

Although the SAC focuses almost exclusively on the potential for harm based on the vulnerability of Radlink's servers, Plaintiff's Response argues that even if the Court finds that her allegations regarding the server vulnerabilities do not sufficiently plead an injury in fact, that she has adequately pleaded an economic injury in fact. (Doc. 81). Plaintiff argues that she has established an economic injury, specifically "the payment for services (secure medical care) that she paid indirectly to Radlink but, because of Defendant's conduct, did not receive." (Doc. 81 at 10). Plaintiff argues that this theory has nothing to do with whether there was a breach of her data, but rather that she suffered an injury in fact because of the "money she lost."[8] (*Id.* at 10-11).

"[E]conomic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972). Economic harm based on the "benefit of the bargain" or unjust enrichment theories have been recognized as a viable basis for standing where an injury in fact is established. *Chavez v. Blue Sky Natural Beverage Co.,* 340 Fed. Appx. 359, 360–61 (9th Cir. 2009). Moreover, "[i]n order to establish standing under the UCL, a plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition. The California Supreme Court has referred to these elements as the 'economic injury' and 'caus[ation]' requirement." *In re Anthem, Inc. Data Breach Litig*., 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016). The California Supreme Court has held that to plead an injury in fact sufficient for purposes of the UCL, it is necessary for a plaintiff to establish an "identifiable monetary" injury in a "nontrivial amount." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 887 (Cal. 2011). Courts have also held that for standing to sue under a benefit of the bargain theory, it is necessary for the plaintiff to be aware of a promised

---

[8] Significantly, the factual allegations of Plaintiff Blum's experience constitute less than one page of the forty-three-page SAC.

service for the plaintiff to claim that they were not provided to them. *See In re LinkedIn User Privacy Litig.,* 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013).

Plaintiff argues that she has sufficiently pleaded an economic injury, because other courts have found Article III standing, "where a plaintiff alleges she paid for a good or service but did not receive the full benefit of what she paid for." (Doc. 81 at 11). However, as with the cases cited in the context of her data breach arguments, the cases cited for her economic injury theories are only similar to the facts here in that they involve electronically stored data. Plaintiff again cites to the *In re Yahoo! Inc.* customer data breach lawsuit, which held that plaintiffs who alleged a benefit of the bargain economic loss on the theory that they failed to receive expected data security services had alleged an injury in fact. *In re Yahoo! Inc.*, 2017 WL 3727318, at *1 (N.D. Cal. Aug. 30, 2017). However, the benefit of the bargain losses in that case were only attributed to those Yahoo! users registered for "Small Business Services." (*Id.* at 17). As the court stated, "[u]sers must pay for Small Business Services, and users are required to provide credit or debit card information for automatic monthly payments for Small Business Services." *Id.* That case is inapposite to the facts here.[9] Other "benefit of the bargain" cases cited by Plaintiff involved individuals who *contracted* and paid for a service that came with the *promise* to protect data. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1224 (N.D. Cal. 2014) (finding standing under the UCL because "[f]our of the six [p]laintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing"); *see also In re Anthem*, 162 F. Supp. 3d at 985 ("As a result of Anthem and Anthem Affiliates' failure to implement the security measures *required by the contracts*, Plaintiffs and Statewide Class Members did not receive the full benefit of their bargain, and instead received . . . services that were less valuable than what they paid for.") (emphasis added).

---

[9] The *Yahoo* court, in deciding that plaintiff had alleged an injury in fact, further stated that "Defendants do not address Neff's benefit of the bargain losses in their motion to dismiss, and Defendants do not argue that these losses are insufficient to allege an injury in fact. For these reasons, Neff's allegations of benefit of the bargain losses are sufficient to allege an Article III injury-in-fact." *In re Yahoo! Inc.*, 2017 WL 3727318, at *17.

1     Here, Plaintiff does not allege direct business, contractual, medical, or financial dealing with Radlink, nor does she allege she was aware of Radlink's existence at the time she was treated at FastMed.  The SAC alleges that Plaintiff paid "directly through deductibles *and/or* copays and indirectly through her insurance premiums" for the medical care.  (Doc. 74 at 32).  The argument in her Response, but noticeably not in her SAC, that she paid Radlink for "secure medical services" and suffered a loss of money or property by paying her monthly insurance premiums, deductibles "and/or" copays, is simply not adequate to show economic injury sufficient to establish an injury in fact.[10]  (Doc. 74 at 32); *See Joseph v. Costco Wholesale Corp*., 2014 WL 12772080, at *2 (C.D. Cal. Nov. 13, 2014).  Therefore, Plaintiff did not sufficiently allege that she paid for security services which she alleges she did not receive.  *See In re LinkedIn,* 932 F. Supp. 2d at 1093 (finding no Article III standing where "the FAC fails to sufficiently allege that Plaintiffs actually provided consideration for the security services which they claim were not provided).

Indeed, Plaintiff's allegations that she paid Radlink for services that she did not receive are not substantiated.  Her argument is more attenuated because any payment that Radlink would have received is several steps removed from Plaintiff, including insurance premium payments and copayments, payments to FastMed by the insurance company, and payments made to Radlink for services provided to FastMed.  The only payment Plaintiff has indirectly alleged to be a financial injury is her monthly insurance premium payment.  Moreover, this alleged monetary loss is not identified in the SAC and the amount of loss, if any, is trivial at best.  *See In re LinkedIn*, 932 F. Supp. 2d, at 1094 ("This is not the case where consumers paid for a product, and the product they received was different from the one as advertised on the product's packaging. Because Plaintiffs take issue with the way in which LinkedIn performed the security services, they must allege something more than pure economic harm" as a result of paying for the service) (internal citations omitted). Finding Article III standing based on allegations as indirect as those in the SAC would

---

[10] Plaintiff argues that "because Radlink's lax information security practices resulted in her not receiving everything she paid for, she did not receive the benefit of her bargain for secure medical services and was harmed as a result . . .." (Doc. 81 at 13).

- 11 -

1 render the injury in fact requirement meaningless. Plaintiff has simply failed to plead an "identifiable monetary" injury in a "nontrivial amount," and has not shown any harm. *See Kwikset*, 246 P.3d, at 887. Moreover, Plaintiff has not plead an injury that is "fairly traceable to the defendant," because Plaintiff has not shown an injury occurred.[11] *See Mass. v. E.P.A.*, 549 U.S. 497, 517 (2007).

The concluding paragraph of the factual allegations in the SAC is particularly telling, alleging that "[w]ithout the assurance of an independent third-party auditor who can establish that no breach occurred, Plaintiffs and members of the Class *cannot be certain* that Radlink *has not impaired the integrity* of their private medical information." (Doc. 74 at 32) (emphasis added). Plaintiff improperly attempts to place the burden on Radlink to establish standing. This allegation is also contrary to the notice withdrawing the motion for TRO filed two years ago, where Plaintiff acknowledged that "the JBOSS vulnerabilities identified in the Complaint and Motion have been remedied, and therefore, [the] Motion is moot."[12] (Doc. 22).

**IV. Conclusion**

In the 29-months since the filing of the initial complaint, the various Plaintiffs in this matter have been allowed to conduct jurisdictional discovery, have amended their complaint twice to both remove and add additional plaintiffs and claims, all in an attempt to comply with jurisdictional standing requirements. Despite these opportunities, Plaintiff has not pleaded facts to establish an injury in fact and therefore does not have Article III standing. Likewise, because Plaintiff has not alleged that she has sustained an injury in

---

[11] Moreover, Plaintiff appears to argue that the burden for Article III standing is somehow lower in her case because she has plead a claim under the California Unfair Competition law, which has a very broad application. (Doc. 81). However, the Court's Article III analysis is the same in this case as it is in any other case. The complaint must allege that the plaintiff "suffered an injury in fact." *Spokeo II,* 136 S. Ct. at 1547. Plaintiff has not done so here.

[12] That Notice further stated that Plaintiff was satisfied with the independent third-party declarations that concluded that no breach occurred, and that Plaintiff's information was secure. Plaintiff also stated that "Radlink repaired and addressed" the vulnerability and that as a result "Plaintiff's and other Class Members' patient data" is secure moving forward. (Doc. 22).

fact, she cannot seek relief on behalf of other unnamed class members. *See Warth*, 422 U.S. at 502 (Named plaintiffs representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

The allegations in the SAC do not state an injury in fact that would confer Article III standing. Therefore, this Court does not have jurisdiction to hear this case and the Court must grant the motion to dismiss this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss the Second Amended Complaint (Doc. 78) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 15th day of March, 2019.

Honorable Diane J. Humetewa
United States District Judge